IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERESA BILKEY,

                        Plaintiff,

    v.                                                   OPINION and ORDER

RELIANCE STANDARD LIFE
INSURANCE COMPANY,                               20-cv-729-jdp

                       Defendant.

---

    Plaintiff Teresa Bilkey worked as a clinic manager for Group Health Cooperative until 2019. That year, Bilkey took a leave of absence to deal with the worsening symptoms of her ulcerative colitis and Crohn's disease. She did not return to work, and applied for long-term benefits through her employer's disability insurance plan, which was administered by defendant Reliance Standard Life Insurance Company. Reliance denied Bilkey's claim, and affirmed that denial after Bilkey appealed.

    Bilkey now turns to this court for relief under the Employee Retirement Income Security Act (ERISA). Both sides move for summary judgment. Dkt. 17 and Dkt. 21. The court's review is deferential: the court will overturn Reliance's denial of benefits only if it is arbitrary and capricious. Reliance denied benefits primarily based on the opinion of an independent physician consultant, Joseph Palermo. But Palermo's report is fundamentally flawed. Bilkey's medical records, including the reports of her health care providers, show that Bilkey suffered from severe gastrointestinal disease. On medication, her symptoms improved briefly, though not completely, and those symptoms returned. Bilkey's symptoms were plainly severe enough to interfere with her work, but Palermo and Reliance ignored evidence of the severity of those symptoms. The court concludes that Reliance arbitrarily and capriciously

denied Bilkey's benefits. The court will grant Bilkey's motion for summary judgment, deny Reliance's motion, and remand for further proceedings consistent with this opinion.

FACTS OF RECORD

Neither side seeks to introduce evidence outside the record of Reliance's claims review process, so the court will confine its review to that record, which establishes the following.

Teresa Bilkey worked as a clinic manager for Group Health from 2007 to 2019. She participated in a long-term disability insurance plan administered by Reliance, and a short-term disability plan administered by Reliance's sister company, Matrix.

Bilkey suffers from chronic gastrointestinal health problems. She was diagnosed with ulcerative colitis and rectal bleeding in 2017. In 2018, she was diagnosed with Crohn's disease and had six inches of her colon surgically removed.

Her symptoms worsened in 2019. Beginning June 21 of that year, she took leave to address her symptoms. Bilkey sought and received short-term disability benefits from Matrix. She had planned to take a three-month leave, but her gastrointestinal disease did not resolve, and she developed complications. She did not return to work. In September, she notified her employer that she was "retiring due to health reasons." R. 323. She filed for long-term disability benefits with Reliance on September 4.

1. **The plan's definition of disability**

To receive long-term disability benefits under Reliance's plan, Bilkey had to show the following: (1) she was totally disabled as the result of sickness or injury; (2) she was under the regular care of a physician; (3) she satisfied the 90-day elimination period; and (4) she provided satisfactory proof of total disability. R. 20. Totally disabled is defined as "cannot perform the

material duties of [the claimant's] Regular Occupation." R. 12. Regular occupation is defined as the claimant's occupation "as it is performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." R. 11. The term "elimination period" is defined as "a period of consecutive days of total disability . . . for which no benefit is payable." *Id.* Satisfactory proof of disability is not defined.

### 2. Bilkey's medical records

At the time that Reliance made its final benefits determination, Bilkey had provided Reliance with records of her medical visits between March 2019 and January 2020. During that time, Bilkey saw her healthcare providers or sought emergency care 11 times: on March 18, June 20, July 1, September 13, September 25, September 27, September 30, October 1, October 17, December 2, and January 10.

At this point, the court will highlight only a few key details from these records. On June 10, Bilkey had started taking Humira, a medication used to treat ulcerative colitis and Crohn's disease. During her July 1 visit with her gastroenterologist, Ian C. Grimes, Bilkey stated that her urgency and bloody stools had improved, but that other gastrointestinal symptoms and fatigue persisted. In September, Bilkey began reporting new symptoms, including muscle weakness, tingling, lightheadedness, and shortness of breath. Several weeks later, she was hospitalized for two days and diagnosed with prednisone-induced diabetes. Bilkey's providers repeatedly adjusted her medications. Her symptoms did not resolve. More details from Bilkey's records will be discussed in the analysis section below.

### 3. Reliance's initial denial

Bilkey applied for long-term disability benefits on September 4, 2019. Reliance initially denied her claim on September 27, 2019. R. 101. In the denial letter, Reliance summarized

3

Bilkey's medical records, recent visits, and work history. Reliance noted that Bilkey's urgency and bloody stools had improved with Humira, and acknowledged other persistent gastrointestinal symptoms. But Reliance concluded that Bilkey's records did not support a finding of disability after July 1 because her abdominal exam findings were normal; Grimes, the gastroenterologist, did not order work restrictions; and Bilkey had only requested three months leave. (Reliance also noted that the elimination period would not have been completed until September 19.)

### 4. Reliance's denial on appeal

Bilkey requested review of the decision, as provided under the plan. On November 26, Reliance affirmed the denial of Bilkey's benefits. R. 104. The denial letter summarized Bilkey's medical records through October 7, 2019, which included her hospitalization and additional treatment. But Reliance concluded once again that Bilkey's records did not support a disability finding past July 1, based primarily on the reported improvement of symptoms in early July.

### 5. Palermo's report

Bilkey again requested review. Reliance referred Bilkey's case to an external consulting physician, Joseph Palermo, who reviewed Bilkey's records and issued a report dated March 6, 2020. R. 350-53. The report concluded that Bilkey's medical records substantiated her diagnoses, subjective complaints, and treatment plan. R. 352. Palermo concluded that the current treatment plan was consistent with the standard of care and the severity of Bilkey's symptoms. Palermo opined that her prognosis was "guarded" because her response to medication was not yet optimal. But Palermo determined that Bilkey retained the capacity for full-time "light" work.

### 6. Lepore's report

Reliance also obtained a vocational assessment from Frank A. Lepore, a vocational rehabilitation specialist. R. 366. Lepore concluded that Bilkey's position at Group Health was most similar to a combination of two occupations recognized by the Department of Labor: office manager and medical secretary, which are both performed at the sedentary exertional level. Based on Palermo's opinion that Bilkey could perform full-time work at the light exertional level, Lepore concluded that Bilkey was not precluded from performing her occupation as it is performed in the national economy.

### 7. Bilkey's response to the reports

Reliance sent Bilkey a copy of Palermo's and Lepore's reports and gave her an opportunity to provide additional information. R. 111. Bilkey responded with a March 16, 2020 letter that described her daily symptoms: continued urgency and frequency, fatigue, weakness, sleep disturbance, abdominal pain, nausea, rectal bleeding, and incontinence, among others. R. 396. She also provided a letter from Grimes that outlined Bilkey's symptoms, stated that she had active and ongoing ulcerative colitis, that it was not possible for her to work, and that she should be placed on disability. R. 58.

### 8. Reliance's final decision

On April 28, 2020, Reliance upheld its decision to deny Bilkey's claim. R. 112–17. Reliance's denial letter summarized Bilkey's medical history in detail. But ultimately it adopted Palermo's findings and his ultimate opinion that Bilkey was capable of performing full-time work at the light level. Although Bilkey had described her position as particularly demanding because it was split between two clinics, Reliance accepted Lepore's opinion that her job as performed in the national economy was a sedentary one.

ANALYSIS

A participant in a benefit plan covered by ERISA may sue to recover benefits due to her under the terms of her plan, to enforce her rights under the plan, or to clarify her rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). The parties agree that Bilkey's plan is covered by ERISA, and neither side attempts to introduce evidence outside the record of Reliance's review of Bilkey's application. The facts are thus undisputed, and the matter is thus appropriately resolved on summary judgment.

The parties also agree that Reliance had discretionary authority to determine Bilkey's benefits eligibility under the plan, and thus Reliance's determination must be upheld unless it was "arbitrary and capricious." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Arbitrary and capricious review is deferential, but it "is not a euphemism for a rubber-stamp." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009). In deciding whether the decision is arbitrary and capricious, the court considers whether Reliance communicated specific reasons for its denial, whether Bilkey had an opportunity for full and fair review, and whether there is an absence of reasoning to support Reliance's determination. *Leger v. Trib. Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 833 (7th Cir. 2009).

Reliance essentially adopted Palermo's report, so the decisive question is whether Palermo provided adequate reasoning to support his conclusion that Bilkey was capable of full-time work. The court concludes that Palermo's reasoning was inadequate, because he ignored significant evidence of Bilkey's inability to work.

**A. Palermo's report**

Palermo's reasoning was stated in two succinct paragraphs:

> In my opinion, the patient does possess the ability for work capacity as of 6/21/19. The initial time loss appeared related to

6

> the patient's request for the time off. The physician notes do not perform any functional assessment, and do not document objective physical findings to support the medical necessity for time loss, restrictions, or limitations.
>
> In my opinion, based upon the patients documented notes it is my opinion that the patient has work capacity as of 6/21/19 to perform a light workload as defined by the attached definition, on a 40-hour work week, 8 hours daily.

R. 352. The critical fact, according to Palermo, was that Bilkey's physicians did not perform any "functional assessment." This reasoning is unsupportable for several reasons.

First, Palermo's opinion is somewhat self-contradictory: if there were no functional assessments, how could Palermo conclude that Bilkey had the capacity for light work? By limiting Bilkey to light work, Palermo implicitly recognized some limitation of her physical capacity, but he provides no explanation for how he determined that limitation.

Second, it is not apparent why a functional assessment would have been a component of Bilkey's medical treatment for gastrointestinal disease. Functional assessments generally test a person's capacity to perform a variety of physical tasks, such as lifting, carrying, sitting, standing, and hand manipulation. Bilkey's most limiting gastrointestinal symptoms—periodic flares, frequent bowel movements, urgency, diarrhea, and incontinence—didn't directly affect her functional capabilities. They interfered with her attendance and the time she could spend on task, which are the main impediments to her working.

Third, Bilkey's medical records *did* address her ability to work and function. For example, on July 1, Grimes listed Bilkey's monthly flares lasting one to three days each as a work restriction. R. 198. Grimes's September 30 office visit notes state that Bilkey had been unable to perform her job due to her severe illness and that there was no timetable for her to return to work. R. 264. In Bilkey's October 1 visit notes, a provider stated that Bilkey would

continue to lack the energy and the ability to work until her providers figured out the right combination of medications for her. R. 249. Palermo did not dispute Bilkey's diagnoses, or that she was getting appropriate treatment, and he did not dispute any assessment by her healthcare providers. There may not be any "objective finding" to confirm Bilkey's persistent uncontrolled diarrhea, but that is not a symptom that can simply be ignored.

Bilkey's records are replete with uncontested reports of subjective complaints that would clearly affect her capacity for work. For instance, on June 20, Bilkey told her provider that she was so fatigued at work that she could not finish the workday and was afraid to drive home. On July 1, Bilkey reported that it was difficult to work because of her persistent diarrhea, abdominal pain, and urgency. On September 13, Bilkey stated that she lacked the stamina to work the long hours that her job required and could not physically return to her job. She brought a chart of her symptoms to that appointment and marked six days during the prior month that she would have been too sick to work. R. 289. At other medical visits, Bilkey reported that she had weakness and exhaustion three times per week, R. 384, had difficulty climbing stairs, *id.*, needed daily naps, R. 273, had to rest after small tasks like showering, *id.*, and was so weak that it was hard to hold her arms up to wash her hair, R. 341. None of these reports are contested by anyone, including Palermo.

Fourth, objective clinical findings concerning the severity of Bilkey's condition are also present throughout the record. Bilkey had six inches of her colon surgically removed in 2018. R. 211. Her colonoscopy showed granulomas and inflammation throughout her colon that were consistent with ulcerative colitis. *Id.* Laboratory results and imaging revealed abnormal potassium levels, R. 251, elevated fecal calprotectin levels, R. 50, pancreatic cysts and atrophy, R. 264, and gastritis and esophagitis, R. 289. Bilkey was diagnosed with diabetes, based on

laboratory tests, that was attributed to her prednisone treatment. R. 273. These medical findings confirm that Bilkey suffered from a severe and uncontrolled condition over the course of more than a year.

Palermo was not required to agree with Bilkey's treating providers, or to accept Bilkey's subjective complaints about her symptoms. But a plan administrator may not deny a claimant's benefits based on a consulting physician's opinion that ignores a treating physician's medical conclusions and other contrary evidence without explanation. *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009). And it is arbitrary and capricious for a plan to base a benefits denial on a consulting physician's report that contains such significant omissions. *See Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009) (plan administrator improperly relied on an independent medical consultant's conclusion that claimant was not disabled due to an absence of objective evidence of functional limitations, when claimant's file contained numerous test reports indicating a reduced functional capacity); *Dominic W. on behalf of Sofia W. v. N. Tr. Co. Emp. Welfare Benefit Plan*, 392 F. Supp. 3d 907, 919 (N.D. Ill. 2019) (it is arbitrary and capricious for a plan to base a benefits denial on a medical reviewer's report that ignores the weight of the medical evidence).

## B. Improvement on Humira

Reliance added a secondary reason for its denial of Bilkey's application: Bilkey reported, on July 1, that her urgency and bloody stools had improved since she began taking Humira. Reliance repeated this conclusion in its final benefits denial.

This reason is also unsupportable. At the July 1 appointment, Bilkey told Grimes that although her urgency and bloody stools had improved, her other gastrointestinal symptoms, including fatigue, abdominal pain, and diarrhea, remained persistent. More important, after

9

July 1, Bilkey's health declined substantially. Three months after her July visit, Bilkey went back to her providers and complained of severe abdominal pain, urgency, nausea, fatigue, night sweats, blurred vision, bloody stools, bowel movement frequency, and other symptoms. Her provider wrote that Humira did not seem to be helping. R. 298. Two weeks later, Bilkey told her providers that her gastrointestinal symptoms were getting worse and that she had new symptoms that concerned her: muscle weakness, tingling, and lightheadedness, among others. R. 283–84. A few days later, Bilkey went to the emergency room and spent two days in the hospital after being diagnosed with prednisone-induced diabetes. R. 273. She had to return to the emergency room following discharge because she developed vision problems, weakness, shortness of breath, and cardiac symptoms.

Bilkey improved over the next month but declined again in December. She said that her pain had increased and that she was having more frequent diarrhea, some urgency and incontinence, weight loss, night sweats, and other symptoms. By mid-January, Bilkey was still experiencing weakness and she developed eyelid dropping. In late March, Bilkey sent Reliance a letter that detailed her daily health problems, which included urgency, one to six bowel movements, rectal pain and bleeding (which had improved), abdominal pain rated from two to eight out of 10, swollen glands, nausea, indigestion, night sweats, fatigue, leg weakness, and joint pain. R. 396. Grimes stated in a late-March letter that Bilkey had active and ongoing ulcerative colitis. R. 58.

It was thus unreasonable for Reliance to base its denial, even in part, on Bilkey's report of improvement on July 1 because that improvement was only partial and temporary. Reliance acknowledged her new and ongoing symptoms in its denial. But it offered no explanation why Bilkey's single statement at her July 1 office visit should carry such controlling weight.

C. **Grimes's letter**

After obtaining Palermo's report and the vocational assessment, Reliance asked Bilkey to provide any additional information she would like to be considered in her case. Bilkey responded on March 27, 2020, with a letter describing the status of her symptoms. She also included letter that she had recently received from Grimes which stated:

> Ms. Bilkey currently has active ulcerative colitis, which has been ongoing. I performed an extensive evaluation of her and have found that she has active ulcerative colitis involving the large intestine. Part of her intestine has been surgically resected contributing to her symptoms. Her most recent tests continue to show active disease.
>
> Teresa Bilkey has been tried on numerous conventional medications for ulcerative colitis and has not benefited significantly from them for any sustained period of time. Her symptoms include:
>
> Abdominal cramping and pain
> Severe diarrhea, urgency and incontinence
> Fatigue
> Night sweats, nausea
>
> I can state, without question, that Teresa Bilkey has significantly active ulcerative colitis at this time.
> I recommend that she be placed on disability as she is currently not able to seek active employment due to her condition.

R. 58.

Reliance did not acknowledge Grimes's letter in its final decision. And although Reliance was not required to accept or afford special deference to Grimes, *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 774 (7th Cir. 2010), Reliance was required to provide a reasonable explanation for not taking it into account. *Love*, 574 F.3d at 397–98 (a plan may not simply ignore a treating physician's medical conclusion or dismiss it without explanation). Grimes's opinion that Bilkey had active, uncontrolled gastrointestinal disease and unable to work was a

11

material piece of medical evidence in her record; it was unreasonable for Reliance to ignore it without explanation.

In its summary judgment materials, Reliance takes issue with the format of Grimes's letter. Grimes had sent Bilkey the letter over MyChart, and Bilkey forwarded the letter to Reliance and offered to send it on formal letterhead upon request. Reliance now suggests that Grimes did not actually write the letter. But Reliance's denial raised no concerns about the letter's authenticity as a basis for discounting it, and a "post hoc attempt to furnish a rationale for a denial of benefits is not acceptable." *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 696 (7th Cir. 1992). Reliance unreasonably failed to address Grimes's conclusion that Bilkey's condition prevented her from working.

## D. Conflict of interest

In deciding whether a plan's decision to deny benefits is arbitrary and capricious, courts must consider any conflict of interest that exists when a plan has the dual role of deciding and paying benefits claims. *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009); *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 112 (2008). Generally, a conflict of interest is weighed as a factor in a court's review of an ERISA benefits decision and can act as a tie breaker in a close case. *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 440 (7th Cir. 2019).

This case needs no tiebreaker. But, in any case, the court does not consider the conflict of interest significant here. Reliance took appropriate precautions to eliminate its conflict of interest by referring Bilkey's case to Palermo, an independent, third-party physician. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 673 (7th Cir. 2018). Reliance also provided Bilkey with appeal opportunities at multiple stages, gave her copies of Palermo's report and the

vocational assessment, and allowed her to respond. *Id*. Bilkey has not otherwise pointed to any circumstance indicating that Reliance's conflict of interest tainted its decision.

**E. Remedy**

When an ERISA plan's benefits decision is arbitrary and capricious, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits. *Holmstrom*, 615 F.3d at 758; *see also Majeski*, 590 F.3d at 484. This is not a close case, but neither is it one of those rare cases in which the record contains such powerful evidence that the only reasonable determination is that the claimant is entitled to benefits. *Majeski,* 590 F.3d at 484. The court will remand this case to Reliance for further proceedings.

ORDER

IT IS ORDERED that:

1. Plaintiff Teresa Bilkey's motion for summary judgment, Dkt. 17, is GRANTED.

2. Defendant Reliance Standard Life Insurance Company's motion for summary judgment, Dkt. 21, is DENIED.

3. The clerk of court is directed to enter judgment and close the case.

Entered March 24, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge